UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| US FOODS, INC., a Delaware corporation, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 23-4790 |
| BOSTON MARKET CORPORATION, a Delaware corporation, ENGAGE BRANDS, LLC, a Delaware limited liability company, and JIGNESH N. PANDYA, IV, an individual, | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff US Foods, Inc. ("US Foods"), by and through its undersigned counsel, for its Complaint against Defendants Boston Market Corporation ("Boston Market"), Engage Brands, LLC ("Engage Brands"), and Jignesh N. Pandya, IV ("Pandya"), hereby alleges as follows:

## NATURE OF THE CASE

1. US Foods brings this action to recover millions of dollars in damages caused by defendants' failure to meet their contractual and statutory obligations to US Foods.

2. For many years, Defendant Boston Market has purchased various proprietary and non-proprietary food products from US Foods, including produce subject to the Perishable Agricultural Commodities Act. Beginning in 2022, Boston Market began to fall significantly behind in its payment obligations to US Foods. Rather than immediately pursue claims for non-payment, in January 2023 US Foods executed a secured promissory note with Boston Market setting forth a payment schedule. The note was guaranteed by Defendant Engage Brands, an entity related to Boston Market. Despite US Foods' clear contractual right under that note to be paid significant sums of money on specific dates, and Boston Market's obligations under PACA to hold

the sales proceeds of US Foods' produce in trust for US Foods' benefit, Boston Market repeatedly has breached its payment obligations to US Foods, thus necessitating this lawsuit.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action because US Foods' claims for relief under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e, and the implementing regulations of the U.S. Department of Agriculture ("USDA"), 7 C.F.R. § 46.1 *et seq.*, present a federal question pursuant to 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all claims arising out of state law asserted herein because such claims are so related to the PACA claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Jurisdiction and venue are proper in this Court because this dispute arises out of Boston Market's and Engage Brands' breaches of a promissory note which states, in relevant part, that: "Maker submits to the exclusive jurisdiction of all state and federal courts sitting in the State of Illinois and all actions and proceedings arising out of or relating to this Note shall be heard and determined in a state or federal court in the State of Illinois." *See* Exhibit A ¶ 10.

6. Venue also is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to US Foods' claims occurred in Cook County, Illinois, where US Foods' principal place of business is located. Cook County, Illinois is within the geographical boundaries of the Northern District of Illinois.

## THE PARTIES

7. Plaintiff US Foods is a Delaware corporation with its principal place of business at 9399 West Higgins Road, Suite 600, Rosemont, Illinois 60018. US Foods is one of America's

leading foodservice distributors to restaurants, healthcare and hospitality facilities, government operations, and educational institutions across the country.

8. US Foods is engaged in the business of selling and shipping perishable agricultural commodities ("Produce"), as well as other non-PACA food and food-related products and services, in interstate and foreign commerce. US Foods holds a PACA license issued by the USDA.

9. Defendant Boston Market is a Delaware corporation with its principal place of business in Golden, Colorado. At all relevant times, Boston Market was engaged in the business of buying and selling Produce in interstate commerce and was a dealer of Produce subject to the provisions of PACA.

10. Defendant Engage Brands is a Delaware limited liability company with its principal place of business in Pennsylvania. Engage Brands is the guarantor on a January 23, 2023 promissory note executed by Engage Brands and Boston Market in favor of US Foods.

11. Defendant Jignesh N. Pandya, IV is an individual residing in Pennsylvania. Pandya is the President of Boston Market and is in control of the business, finances, and assets of Boston Market. Upon information and belief, Pandya was in a position of control over the PACA trust assets belonging to US Foods at all times relevant to this complaint.

**GENERAL ALLEGATIONS**

12. Pursuant to distribution agreements dated June 9, 2019 and August 5, 2019 (the "Distribution Agreements"), US Foods agreed to supply certain Produce, as well as various other non-PACA food and food-related products and services, to Boston Market in exchange for timely payment of invoices.

13. Boston Market agreed to be bound by the terms of the Distribution Agreements and to pay all charges set forth on each invoice pursuant to its terms. A true and correct copy of a sample invoice sent to Boston Market is attached hereto as Exhibit B.

3

14. On various dates in 2022 and 2023, US Foods supplied Boston Market with Produce and other non-PACA food and food-related products and services by shipping these items to various locations, as directed by Boston Market.

15. Boston Market accepted the Produce and other non-PACA food and food-related products and services from US Foods.

16. In connection with each of these transactions, in accordance with § 499e(c)(4) of PACA, US Foods' invoice to Boston Market contained the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

*See* Exhibit B at 4. Boston Market did not object to the inclusion of this language in any of the invoices.

17. US Foods' invoices also provide that interest shall accrue on all unpaid balances at a rate of 1.5% per month or the maximum rate under the law. *Id.* Boston Market also did not object to the inclusion of this language in any of the invoices.

18. Boston Market failed to pay US Foods the full amount due for certain Produce and other non-PACA food and food-related products and services that accrued on or before January 17, 2023.

19. On January 23, 2023, Boston Market executed a promissory note (the "Note") in favor of US Foods in the principal sum of $11,655,462.00, representing the amount due to US Foods at the time for certain goods and services delivered on or before January 17, 2023 (the "Indebtedness Date"). A true and correct copy of the Note is attached hereto as Exhibit A.

4

20. The parties agreed that any additional goods and/or services US Foods provided to Boston Market after the Indebtedness Date are separate from and in addition to the amounts owed under the Note ("Additional Indebtedness"). *Id.* ¶ C.

21. A portion of the Note's principal relates to indebtedness resulting from Boston Market's agreement to buy, but failure to pay for, Produce. Attached hereto as Exhibit C is a report (the "PACA Report") containing a true and correct summary of all unpaid invoices for Produce US Foods sold to Boston Market through July 21, 2023. The PACA Report includes Produce sold both before and after the Note's execution. Boston Market failed to report any type of problem with any of the Produce covered by the invoices listed in the PACA Report. Boston Market also failed to obtain a USDA inspection of any of this Produce.

22. Under the Note, Boston Market was obligated to pay US Foods installment payments of $125,000.00 every Tuesday and Friday of the week ("Installment Payments") beginning on January 31, 2023 and ending in December 2023 pursuant a Schedule of Payments set forth in Exhibit A to the Note. *Id.* ¶ 1.

23. Boston Market also agreed to pay US Foods interest accruing from the Indebtedness Date at a rate of 7 percent per annum, equal to $807,400.17 ("Deferred Interest"). *Id.* ¶ 5.

24. The Note provides that US Foods will forgive the Deferred Interest if Boston Market makes all Installment Payments on time and in accordance with the Note's Schedule of Payments and if Boston Market remains in good standing with timely payment of the Additional Indebtedness. *Id.*

25. If Boston Market defaulted under the Note at any time, however, it agreed that it "will pay" the Deferred Interest as liquidated damages. *Id.*

26. Boston Market further agreed that any payment made more than three days after its due date would result in an additional late payment charge of five percent of the aggregate payments due. In addition, Boston Market agreed to reimburse US Foods for "any and all costs and expenses, attorneys' fees, fees incurred to collect fees, and court costs, if any, incurred by US Foods in connection with the enforcement or collection of this Note, together with interest on all such expenses paid by US Foods at the rate of 18 percent (18%) per annum." *Id.* ¶ 7.

27. Any payment obligation not made when due or any material breach by Boston Market under any agreement to which it and US Foods were parties constitutes an event of default under the Note. If an event of default occurs, US Foods "may declare the entire unpaid principal balance plus Liquidated Damages and all other sums due under this Note together with any Additional Indebtedness immediately due and payable." *Id.* ¶ 6.

28. The Note also includes a confession of judgment, whereby Boston Market agreed to authorize the clerk or any attorney of any court of record to appear for it and enter judgment by confession against Boston Market in favor of US Foods for the balance due, together with court costs, liquidated damages, late fees, other costs, expenses and attorneys' fees. *Id.* ¶ 12.

29. As security for payment and performance of the Note and the Additional Indebtedness, Boston Market granted US Foods a security interest in Boston Market's assets (the "Collateral"). Specifically, in the Note, Boston Market granted US Foods a security interest in:

> all of [Boston Market's] assets, whether personal or real property, both now owned or at any time in the future acquired, wherever located, including, but not limited to cash, accounts, general intangibles, goods, inventory, equipment, fixtures, vehicles, licenses, accounts receivable, chattel paper, furnishings, instruments, investment property, letter-of-credit rights, and insurance claims together with the proceeds and products of any of them (collectively, the **"Collateral"**).

*Id.* ¶ 2.

6

30. The Note authorizes US Foods to prepare and file any UCC financing statements, as appropriate, to cover the Collateral. *Id.* ¶ 3.

31. A UCC Financing Statement was filed with the Delaware Secretary of State on January 26, 2023, granting US Foods a blanket security interest in:

> all of [Boston Market's] assets, whether personal or real property, both now owned or at any time in the future acquired, wherever located, including, but not limited to cash, accounts, general intangibles, goods, inventory, equipment, fixtures, vehicles, licenses, accounts receivable, chattel paper, furnishings, instruments, investment property, letter-of-credit rights, and insurance claims together with the proceeds and products of any of them.

A true and correct copy of the UCC Financing Statement is attached hereto as Exhibit D.

32. The Note also includes a guaranty executed by Engage Brands (the "Corporate Guaranty"). Pursuant to the Corporate Guaranty, Engage Brands "unconditionally" guaranteed payment of all amounts due by Boston Market to US Foods. The Corporate Guaranty is due and immediately payable upon the occurrence of any event of default. Exhibit A ¶ 4.

33. Boston Market repeatedly has failed to meet its payment obligations under the Note.

34. Boston Market first failed to make one of the $125,000.00 Installment Payments under the Note on February 3, 2023, and Boston Market has failed to make the vast majority of Installment Payments since that date.

35. In addition, Boston Market has failed to pay US Foods more than $300,000 in Additional Indebtedness for certain goods and services—including Produce and other non-PACA food and food-related products and services—delivered after January 17, 2023, which amount, upon information and belief, includes all earned credits, discounts, and other reductions due and owing as of the date of this complaint.

36. Each of Boston Market's many failures to meet its payment obligations under the Note constitutes a separate event of default that entitles US Foods to accelerate the deadline for all outstanding payments.

37. Pursuant to the terms of the Note and the Corporate Guaranty, Boston Market and Engage Brands respectively owe US Foods the remaining principal balance under the Note, which exceeds $10.5 million, as well as Deferred Interest in the sum of $807,400.17, a late payment charge of five percent of the aggregate payments due, US Foods' attorneys' fees and court costs, together with interest on all such expenses at the rate of 18 percent per annum, and Additional Indebtedness in an amount exceeding $300,000.

38. US Foods has made numerous demands for payment to Defendants Boston Market and Pandya, both orally and in writing, over the course of several months.

39. Despite these demands, payment remains due and owing.

## COUNT I
## ENFORCEMENT OF PACA TRUST – BOSTON MARKET

40. US Foods incorporates and re-alleges the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

41. US Foods is, and at all times during 2022 and 2023 was, engaged in the business of selling and shipping perishable agricultural commodities (i.e., the Produce), as defined by PACA.

42. US Foods is, and at all times during 2022 and 2023 was, a licensee under PACA.

43. The Produce that is the subject of this action was purchased and sold in, or in contemplation of, the course of interstate and/or foreign commerce.

8

44. Each of the invoices submitted to Boston Market by US Foods for Produce sold to Boston Market contained language necessary to retain a trust claim over the Produce pursuant to § 499e(c)(4) of PACA.

45. Upon delivery of its invoices for Produce to Boston Market, US Foods became the beneficiary of a floating, non-segregated statutory trust on all of the Produce, and on any receivables or proceeds from the sale of such Produce or products or assets derived therefrom.

46. US Foods has performed and fulfilled all duties required to preserve its PACA trust benefits in the total amount of $1,538,418.75 plus interest at a rate of 1.5% per month, in all PACA trust assets under the control of, or in the possession of, Boston Market. *See* Exhibit C.

47. Boston Market is the statutory trustee of the PACA trust assets in its possession or under its control.

48. The PACA trust requires Boston Market to hold and preserve all goods, inventories, proceeds and receivables in trust for the benefit of US Foods until full payment has been made to US Foods.

49. Upon information and belief, Boston Market has failed to maintain the trust assets and keep them available to satisfy Boston Market's obligations to US Foods in violation of its statutory duty to preserve the trust assets for the benefit of US Foods under § 499b(4) of PACA and the regulations enforcing the PACA trust provisions, 7 C.F.R. § 46.46.

50. As a direct and proximate cause of the wrongful acts and omissions of Boston Market, US Foods has suffered losses in the amount of $1,538,418.75 plus interest, all of which qualify for protection under the PACA trust.

**WHEREFORE**, pursuant to the foregoing, Plaintiff respectfully requests:

(i) an order requiring Boston Market to segregate PACA trust assets in the amount of $1,538,418.75 plus interest;

(ii) that judgment be entered in its favor and against Boston Market in an amount to be determined at trial, but in no event less than $1,538,418.75, plus US Foods' attorneys' fees and court costs, as well as pre- and post-judgment interest; and

(iii) that Plaintiff be granted such other and further relief as the Court deems just and proper.

## COUNT II
## UNLAWFUL DISSIPATION OF TRUST ASSETS BY AN OFFICER – PANDYA

51. US Foods incorporates and re-alleges the allegations set forth in paragraphs 1 through 50 above as though fully set forth herein.

52. Upon information and belief, at all relevant times, Pandya was an officer of Boston Market and in a position of control over the PACA trust assets belonging to US Foods.

53. At all relevant times, Pandya had the authority to direct the payment of Boston Market's operating funds and otherwise had the power to direct the application or disposition of the PACA trust assets.

54. As an officer of Boston Market, Pandya was a statutory trustee with a duty to safeguard the PACA trust assets and was required to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations owed to US Foods.

55. Pandya failed to direct Boston Market to fulfill its statutory duties to preserve the PACA trust assets and to pay US Foods for the Produce it supplied.

56. Pandya's failure to direct Boston Market to maintain the PACA trust assets and to pay US Foods for the Produce US Foods supplied constitutes an unlawful dissipation of trust assets by an officer and a breach of his fiduciary duties as a statutory trustee.

57. As a result of such unlawful dissipation of trust assets and breach of fiduciary duties, US Foods has been deprived of its right as a beneficiary in the PACA trust and has been denied payment for the Produce it supplied.

**WHEREFORE**, pursuant to the foregoing, Plaintiff respectfully requests:

(i) that judgment be entered in its favor and against Pandya in an amount to be determined at trial, but in no event less than $1,538,418.75, plus US Foods' attorneys' fees and court costs, as well as pre- and post-judgment interest; and

(ii) that Plaintiff be granted such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT (NOTE) – BOSTON MARKET

58. US Foods incorporates and re-alleges the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

59. The Note is a valid and enforceable contract between US Foods and Boston Market.

60. US Foods is the holder of the Note and fully performed all of its obligations thereunder.

61. Boston Market was required to pay to US Foods the Installment Payments for the duration of the Note as set forth in the Schedule of Payments.

62. Boston Market repeatedly failed to make Installment Payments to US Foods under the Note on the dates those payments were due.

63. Each of Boston Market's failures to make a timely Installment Payment constitutes an event of default under the Note.

64. In accordance with the terms of the Note, Boston Market now owes US Foods the remaining principal balance under the Note, which exceeds $10.5 million, plus liquidated damages in the sum of $807,400.17, a late payment charge of five percent of the aggregate payments due,

and US Foods' attorneys' fees and court costs, together with interest on all such expenses at the rate of 18 percent per annum.

65. US Foods has made numerous demands for payment, but Boston Market has not paid the amounts due and owing.

66. As a direct and proximate cause of Boston Market's breach, US Foods has suffered damages.

**WHEREFORE**, pursuant to the foregoing, Plaintiff respectfully requests:

(i) that judgment be entered in its favor and against Boston Market in an amount to be determined at trial, but in no event less than $11.3 million, plus a late payment charge of five percent of the aggregate payments due from Boston Market, US Foods' attorneys' fees and court costs, together with interest on all such expenses at the rate of 18 percent per annum, as well as pre- and post-judgment interest; and

(ii) that Plaintiff be granted such other and further relief as the Court deems just and proper.

## COUNT IV
## BREACH OF GUARANTY – ENGAGE BRANDS, LLC

67. US Foods incorporates and re-alleges the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

68. The Note, which contains the Corporate Guaranty at paragraph 4, is a valid and enforceable contract.

69. US Foods fully performed all of its obligations under the Note.

70. Under the Corporate Guaranty, Engage Brands unconditionally guaranteed Boston Market's obligations under the Note.

71. The Corporate Guaranty was immediately due and payable upon Boston Market's default.

72. In accordance with the terms of the Note, Engage Brands now owes US Foods the remaining principal balance under the Note, which exceeds $10.5 million, plus liquidated damages in the sum of $807,400.17, a late payment charge of five percent of the aggregate payments due, US Foods' attorneys' fees, and court costs, together with interest on all such expenses at the rate of 18 percent per annum, and Additional Indebtedness in an amount exceeding $300,000.

73. As a direct and proximate cause of Engage Brands' breach, US Foods has suffered damages.

**WHEREFORE**, pursuant to the foregoing, Plaintiff respectfully requests:

(i) that judgment be entered in its favor and against Engage Brands in an amount to be determined at trial, but in no event less than $11.3 million, plus a late payment charge of five percent of the aggregate payments due from Boston Market, US Foods' attorneys' fees and court costs, together with interest on all such expenses at the rate of 18 percent per annum, and Additional Indebtedness in an amount exceeding $300,000, as well as pre- and post-judgment interest; and

(ii) that Plaintiff be granted such other and further relief as the Court deems just and proper.

**COUNT V**
**BREACH OF CONTRACT (DISTRIBUTION AGREEMENTS) – BOSTON MARKET**

74. US Foods incorporates and re-alleges the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

75. The Distribution Agreements were valid and enforceable contracts between US Foods and Boston Market.

76. US Foods fully performed all of its obligations under the Distribution Agreements.

77. Under those agreements, US Foods provided food and food-related products and services to Boston Market after the Indebtedness Date. Boston Market breached the Distribution Agreements by refusing to pay for these food and food-related products and services, which constitute Additional Indebtedness under the Note and total more than $300,000.

78. Under the Distribution Agreements, Boston Market also agreed to purchase, and did purchase from US Foods, significant quantities of proprietary products that were designed to be used exclusively by Boston Market in the sale of food and food-related items to its customers ("Proprietary Products").

79. US Foods had a contractual obligation under the Distribution Agreements to stock certain levels of Proprietary Products, and Boston Market had a contractual obligation to purchase certain minimum quantities of Proprietary Products.

80. Upon termination of the Distribution Agreements, Boston Market was required to either: (1) purchase all remaining inventory of Proprietary Products from US Foods; or (2) arrange for another distributor to purchase the Proprietary Products from US Foods at previously negotiated contract prices within a matter of days.

81. By letter dated May 26, 2023, after enduring significant non-payment under the Distribution Agreements and the Note, US Foods notified Boston Market that US Foods was terminating the Distribution Agreements effective immediately.

82. At the time, and still today, US Foods possessed an inventory of more than $2 million in Proprietary Products. Boston Market has not agreed to purchase all of the Proprietary Products or to arrange for another distributor to buy them within the time periods set forth in the Distribution Agreements, thereby breaching those agreements.

83. As a direct and proximate result of this breach, Boston Market has sustained monetary damages exceeding $2 million.

**WHEREFORE**, pursuant to the foregoing, Plaintiff respectfully requests:

(i) that judgment be entered in its favor and against Boston Market in an amount to be determined at trial exceeding $300,000 for the Additional Indebtedness, plus US Foods' attorneys' fees and court costs, together with pre- and post-judgment interest;

(ii) that judgment be entered in its favor and against Boston Market in an amount to be determined at trial exceeding $2 million for the Proprietary Products, plus US Foods' attorneys' fees and court costs, together with pre- and post-judgment interest; and

(iii) that Plaintiff be granted such other and further relief as the Court deems just and proper.

Dated: July 24, 2023

Respectfully submitted,

US FOODS, INC.

By: */s/ David J. Doyle*
   One of its attorneys

David J. Doyle
Shelly A. DeRousse
Elizabeth L. Janczak
SMITH, GAMBRELL & RUSSELL, LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000
ddoyle@sgrlaw.com
sderousse@sgrlaw.com
ejanczak@sgrlaw.com

*Attorneys for Plaintiff*